October 22, 2004

Hon. Cheryl L. Pollack
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Judge Pollak:

  Re: Blake v. Race, et al., CV 01-6954 (SJ) (CLP)

  We write in response to the City's October 15, 2004 letter disclaiming any conflict in their representation of ADA Catalano in this matter.

  As you may recall, during the conference on October 13, 2004, I brought to your attention the obvious conflict of interest arising from Corporation Counsel's recent decision to represent Assistant District Attorney Anthony Catalano, a non-party witness who has been helpful to plaintiff's case, while continuing to represent all the defendant police officers in this pending civil rights lawsuit. At the conclusion of the discussion and only after Mr. Larkin had explained why he believed there was no conflict nor impropriety, you informally opined that the conflict could not be clearer. He agreed that if his office concluded that it would not voluntarily withdraw from representing the non-party witness, he would notify the Court so that the Court could consider the need for a more formal resolution. Undeterred by the Court's clear – albeit informal – view on the issue and recklessly unaware of pertinent case law, Mr. Larkin's supervisors appear to prefer the more formal approach.

  In this lawsuit, one of the causes of action is premised on the defendant officers' failure to provide the prosecutor with Brady material concerning Dana Garner, the only prosecution witness to connect Jeffrey Blake to the commission of the double homicide. Since prosecutors enjoy absolute immunity but police immunity is only qualified, for plaintiff to prevail he must prove that the exculpatory or impeachment information was not passed on to the prosecutor.

Hon. Cheryl L. Pollack
Page 2.

.

      In early summer, I contacted Anthony Catalano, Esq., the Assistant District Attorney assigned to prosecute Mr. Blake for the double homicide. He continues to be employed as an assistant in Mr. Hynes' office. We discussed the case and in particular the merits of the Brady claim in the civil context. I explained to Mr. Catalano that I hoped to secure an affidavit from him which would reflect our conversation and related matters. He explained that although he did not expect it to be a problem, before he could agree to proceed by affidavit, he needed to confer with his supervisors. Eventually, I was contacted by, Dino Amaroso, in house Counsel to the District Attorney. Mr. Amaroso indicated that there was no problem proceeding by affidavit and suggested that I draft an affidavit that he and Mr. Catalano could review.

      On September 14, 2004, I mailed the attached affidavit to Mr. Amaroso. After he reviewed it with Mr. Catalano, Mr. Amaroso explicitly told me that the contents of the affidavit were fine and that his office had no problem with it. On September 29, 2004 I received a letter from Arthur Larkin informing me that his office "will undertake to represent the Kings County DA's office in connection with the referenced lawsuit." In the same letter he asked for a copy of the affidavit for his review. (Since I do not have this letter in digital form, a hard copy will be faxed to chambers on Monday). After receiving the letter I called Mr. Larkin immediately to bring the conflict of interest to his attention and asked him to refrain from representing Mr. Catalano. He refused to withdraw. I called Mr. Amaroso who confirmed that the Corporation Counsel had become involved in the matter and that the Corporation Counsel had advised the Kings County District Attorney's office not to have Mr. Catalano sign the affidavit.

      It is plaintiff's position that not only is the City's eleventh hour representation of this non party witness a clear conflict of interest but that to obstruct the securing of the affidavit may very well constitute unprofessional and sanctionable conduct.

      As for the excerpts from deposition transcripts supplied to the Court by Mr. Larkin in his letter of October 15, they are beside the point. For instance, it matters little that defendant Race now knows that Garner "supposedly had seen the Diaz murder at the time he informed the police that Blake committed the Felix and Deny [sic] murders, but that Garner did not tell the [Blake] detectives about the murder." What matters is what he knew then and what if anything he communicated to prosecutors. Additionally, just because he may have a confused present understanding of police obligations under Brady, ("that's for a defense attorney, not for us." p. 186), doesn't mean he never passed on the information to any prosecutor for some non-Brady reason. As for his subordinates in the detective unit, their testimony is also not dispositive on this issue. Although some of the officers may claim not to remember certain details during their depositions, they may claim to have retrieved their memories at trial.

The best evidence to counter any defense to the Brady claim is to secure an unequivocal statement from the prosecutor. In the context of this lawsuit, the prosecutor's position and that of the defendant police officers are at odds. The police are off the hook if they or their colleagues conveyed the critical information to the prosecutor. Mr. Catalano, on the other hand, knows full well the potential disciplinary consequences should it be determined that he knowingly failed to disclose Brady material to the defense. He says as much in the attached affidavit. It is clearly in his interest to be able to insist that he never received such information.

The City cites no case law in their letter. Had the City's lawyers conducted even the barest legal research, they would have known that the law on this issue supports the Court's informal, cautionary opinion as voiced in conference. In U.S. v. Schwarz, 283 F.3d 76 (2nd Cir. 2002), the Second Circuit reversed a criminal verdict, even though the officers there had waived conflict in open court and the trial judge, after holding a hearing, had accepted the waiver, permitting simultaneous representation.[1] The Court of Appeals ordered a new trial, finding an unwaivable conflict based on the different defenses and factual contentions among the represented parties. Schwarz, 283 F.3d at 91, 95-6.

All of the issues in Schwarz – independent advice, conflicting defenses, different needs in terms of cross-examination and impeachment, and client confidences – are critically implicated here. That, at present, "there does not appear to be any factual inconsistency" to Mr. Larkin between Mr. Catalano's statements and those of defendants is, again, inconsequential. The mere possibility of future conflict suffices to trigger the Court's duty to protect the parties from being harmed by conflicted counsel and may lead to disqualification.[2] Where, as here, the Court is

---

[1] Though Schwarz is a criminal case, the conflict questions it illuminates are even more compelling in a civil case, in which this Court does not have to balance conflict questions with a criminal defendant's constitutional right to counsel of their choice. The leading case on conflict of interest in the civil context is Dunton v. County of Suffolk, 729 F.2d 903 (2d Cir. 1984), amended on other grounds, 748 F.2d 69 (2d Cir. 1984). In Dunton, the court held that the Suffolk County Attorney's representation of the municipal entities and the municipality's employee created a conflict of interest which deprived the employee of a fair trial. "A municipality may avoid liability by showing that the employee was not acting within the scope of his official duties" and "[t]he employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties." Dunton, 729 F.2d at 907. But the conflict in the instant case is unwaivable since by definition the police and prosecutor have opposing positions.

[2] See Dunton, 729 F.2d at 909 ("[T]rial courts have a duty ... to assure the litigants of a fair trial.") (internal citations omitted).

Hon. Cheryl L. Pollack
Page 4.


faced with a high likelihood of future conflict, with counsel having to take adverse positions as to critical potential defenses, disqualification should result just as surely as it would in instances of actual conflict. Indeed, here as in <u>Dunton v. County of Suffolk</u>, "[b]ecause of the imminent threat of a serious conflict, disqualification would have been appropriate ... even before any proceedings began." 729 F.2d 903 (2d Cir. 1984), amended on other grounds, 748 F.2d 69 (2d Cir. 1984).

      Plaintiff requests an order from the Court instructing the Corporation Counsel to cease its representation of Mr. Catalano and the Kings County District Attorney's Office and an admonition that by instructing the prosecutor's office not to sign an affidavit helpful to the plaintiff that they had intended to sign, the Corporation Counsel engaged in professional misconduct. On a final note, it is obvious that Mr. Larkin did not make this decision himself. Plaintiff urges the Court to direct the supervisor in the Corporation Counsel's office responsible for this decision to appear personally.

      Yours truly,


      /s/Peter J. Neufeld
      Peter J. Neufeld


Attachments
CC: All Counsel