UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

JEFFREY BLAKE,

                          Plaintiff,                        Affidavit

           -against-                        No. CV 01-6954 (SJ)(CLP)

MICHAEL S. RACE, RICHARD BREW, DAVID
CARBONE, and PHILIP J. SAURMAN individually, and
JOHN DOES 1-10, police officers and supervisory officers
of the New York City Police Department, individually, the
identity and number of whom is presently unknown;

                          Defendants.

------------------------------------------------------------------------x

STATE OF NEW YORK    )
                              )  ss.:
COUNTY OF NEW YORK  )

        ANTHONY CATALANO, being duly sworn, deposes and says:

        1.  I am an attorney duly licensed to practice law in the State of New York and have worked at the Kings County District Attorney's Office since 1987.

        2.  This Affidavit is based upon my own personal knowledge, and information and belief, the sources of which are set forth below.

        3.  In 1990, I tried the case of State of New York v. Jeffrey Blake.  The State's eyewitness in that case, Mr. Dana Garner, was the only prosecution witness to connect Mr. Blake to the crimes.  On June 25, 1990, Mr. Garner had given detectives at the 75th precinct a statement that he saw the defendant, Jeffrey Blake, commit a double homicide, killing Mr. Everton Denny and Kenneth Felix, on June 18, 1990.  On May 23, 1991, Jeffrey Blake was convicted following a jury trial and sentenced to two consecutive eighteen-years-to-life terms.

4. Several years later, in 1998, our office conducted an investigation into the Jeffrey Blake case, after the defense attorney, Michelle Fox of the Legal Aid Society Appeals Division, moved pursuant to New York's Criminal Procedure Law § 440.10 (1)(g) to vacate Blake's 1991 conviction based on newly discovered evidence of innocence. That motion was based in part on Dana Garner's recantation, stating he never saw Mr. Blake commit a murder, together with other newly discovered evidence significantly undermining Garner's credibility.

5. On October 27, 1998, the Kings County District Attorney's Office joined in Legal Aid's motion, concluding that there was simply no evidence to connect Jeffrey Blake to the commission of the crime. We conducted an investigation into the case and determined that in fact, Dana Garner "was not a witness to the event that he testified to" and that "Mr. Garner's testimony is not something to be relied upon." See attached Transcript, 440 hearing, People v. Blake, No. 7376-90, October 29, 1998 at p.4-6. In the fall of 1998, investigators from the King's County District Attorney spoke to "a number of members of Dana Garner's family ... they considered him a liar." Id. at 4. Family members who lived down the block from the crime scene and were present in the crowd shortly after the Denny / Felix homicide on July 18, 1990, stated "independently and collectively over the phone and in interviews and in face-to-face interviews with investigators from our office that Dana Garner was not in New York on that date." Id. at 5. Dana Garner's girlfriend, who he testified at the grand jury was also an eyewitness to the Denny / Felix homicide, stated that "[s]he would have known about such an incident, [and] that she did not see anything and [what Garner had said in 1990] was not true." Id. We learned that Dana Garner "was accused of and subsequently plead guilty to a criminal act in North Carolina," arson, and that he was in North Carolina at least until June 11, 1990. Id. at

2

10.

      6. At the October 29, 1998 hearing, Jeffrey Blake's conviction was vacated and the indictment dismissed. Id.

      7. Mr. Denny and Felix were murdered on June 18, 1990. According to the detectives, Dana Garner first gave a statement that he saw Jeffrey Blake commit the Denny / Felix homicide, a week later, on the afternoon of July 25, 1990 at 2 p.m. As a result of our office's post-conviction investigation, I now know, but did not know at the time of trial, that according to the detectives, Mr. Garner returned to the 75th precinct two days later, on June 27, 1990. According to the detectives, on June 27, Garner gave a second statement, that he saw a separate homicide in which Lionel Diaz was killed, early in the morning of June 25, 1990, just hours before he reported the Denny / Felix homicide.

      8. Had I known this before Jeffrey Blake's trial, I would have asked Mr. Garner why he did not mention seeing the Diaz homicide when he first came into the precinct to report the Denny / Felix homicide on the 25th. But I did not know that and the detectives did not tell me that. Had I known that information, that Garner failed to mention the Diaz homicide of July 25, 1990, when he visited the 75th Precinct to report on the Denny / Felix murder, I would have provided it to defense counsel, pursuant to my Brady and Rosario obligations, because that information could be used to impeach Mr. Garner.

                                              _____
                                                   ANTHONY CATALANO

Sworn to before me this
  th day of September, 2004

_____
     Notary Public